**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| DAVID NEIL WELLMAN, | ) | |
|     **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-1094** |
| | ) | |
| **MARTY ANDERSON, Warden,** | ) | |
| **FCI Beckley,** | ) | |
|     **Respondent.** | ) | |

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

On October 8, 2004, Petitioner, then an inmate at FCI Beckley, Beaver, West Virginia, and acting *pro se,* filed an Application Under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.[1] (Document No. 1.) Petitioner challenges the Federal Bureau of Prisons' [BOP] practice implemented in December, 2002, limiting the portion of his sentence that could be served in a Community Corrections Center [CCC]. (<u>Id.</u>) By Standing Order also filed on October 8, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 3.)

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts which have been extended to petitions filed under § 2241, "[i]f it plainly appears from the face of the petition . . .that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Having examined Petitioner's § 2241 Application, the undersigned has concluded that Petitioner's Application must

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

be dismissed.

## STATUTORY AND REGULATORY HISTORY

Title 18, U.S.C. Section 3624(c), provides that shortly before the expiration of federal prisoners' sentences, the BOP must place the prisoners under conditions which will allow them an opportunity to adjust to re-entry into the community. 18 U.S.C. § 3624(c). This pre-release custody is limited in duration to the last ten percent of the prisoners' sentences, not to exceed six months. Id. Section 3624(c) provides:

> **Pre-release custody**. – The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.

On December 13, 2002, the Department of Justice's [DOJ] Office of Legal Counsel [OLC] issued a memorandum opinion indicating, in part, that the BOP must literally comply with the requirements of § 3624(c) with respect to placing federal prisoners in pre-release custody. The OLC memorandum stated:

> Your office has advised us that BOP, in exercising its authority under section 3624(c), has sometimes not abided by the time limitation set forth in that section. The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 percentum of the term to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

(Court Exhibit A, Memorandum for Larry D. Thompson Deputy Attorney General, p. 7, n. 6.) Prior to December, 2002, the BOP had a practice of placing non-violent and low-risk prisoners in halfway houses or CCCs, for the last six months of their sentence "regardless of the length of their

sentences." (Court Exhibit B.) On December 16, 2002, the Deputy Attorney General forwarded the OLC's memorandum opinion to Kathleen Hawk Sawyer, then Director of the BOP, with a memorandum advising that the "BOP is obligated to adhere strictly . . . to statutory directives," and "immediately should take all steps necessary to ensure that its sentencing placement decisions are in full compliance with the governing law." (Court Exhibit B, Memorandum to Director of BOP, p. 1.) The memorandum emphasizes that the BOP must further comply with the Federal Sentencing Guidelines which were enacted "to enhance the rationality and uniformity in federal sentencing by eliminating, . . . the 'unjustifiably wide range of sentences'" imposed on defendants with similar convictions and criminal histories. (Id., p. 2.)(citations omitted).

The BOP's practice prior to December, 2002, primarily advantaged "white collar criminals" who were typically non-violent and low-risk offenders. However, "[w]hite collar criminals are no less deserving of incarceration, if mandated by the Sentencing Guidelines, than conventional offenders." (Id., p. 3.) Given the preferential treatment to white collar criminals, the OLC feared that the BOP's prior practice ran "the risk of eroding public confidence in the federal judicial system." Accordingly, the Deputy Attorney General advised:

> [W]hile BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," there are firm restrictions on such transfers. Specifically, the transfer may not exceed the *lesser* of (i) the last ten percent of the sentence imposed on the offender, *i.e.*, the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations.

(Id., p. 2.) The BOP has since changed its prior practice, as codified in 28 C.F.R. §§ 570.20-21

(2005),[2] and will no longer transfer prisoners to halfway houses or CCCs for a period of time in excess of a reasonable portion of the last ten percent of the prisoners' sentences.

## PROCEDURE AND FACTS

On December 7, 2000, Petitioner was sentenced to a sixty month term of imprisonment to be followed by a one year term of supervised release in the United States District Court for the Eastern District of Kentucky for conspiring to possess marijuana in violation of 21 U.S.C. § 846. United States v. Wellman, Criminal Case No. 7:00-00014-10 (E.D. Ky. Dec. 7, 2000). (Document No. 1, p. 1.) Petitioner filed his Application under 28 U.S.C. § 2241 in this case on October 8, 2004, alleging that the BOP's December, 2002, change in policy is an erroneous interpretation of 18 U.S.C. §§ 3621(b) and 3624(c). (Id.) Petitioner also filed on October 8, 2004, his "Motion for a Temporary Restraining Order and/or Preliminary Injunction with Incorporated Memorandum of Points and Authorities." (Document No. 2.) In this Motion, Petitioner requests that he be released to a halfway house and further alleges that the BOP's December, 2002, policy (1) violates the notice and comment requirements of the Administrative Procedure Act [APA]; (2) violates the *Ex Post Facto* Clause of Article 1, Section 9, Clause 3, of the United States Constitution; (3) violates the Due

---

[2] Title 28, C.F.R. § 570.21 provides:

§ 570.21 When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program 18 U.S.C. 3621(e)(2)(A), or shock incarceration program 18 U.S.C. 4046(c)).

Process Clause of the Fifth Amendment; (4) constitutes an erroneous interpretation of 18 U.S.C. §

3624(c)(3); and (5) when applied to him, results in irreparable harm.[3] (Id.) He requests that the Court

direct the Respondent to reconsider his CCC placement, "without regard to the Attorney General's

December 22, 2002 opinion." (Document No. 1, p. 24.)

## DISCUSSION

### I.    Petitioner's Claims are Moot.

The undersigned finds that Petitioner's § 2241 Application must be dismissed as moot.

Article III, Section 2 of the United States Constitution provides that federal courts may adjudicate

only live cases or controversies. See Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S.Ct.

1249, 1253, 108 L.Ed.2d 400 (1990). This means that the "litigant must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable

judicial decision." Id. In the context of a *habeas corpus* proceeding, the writ "does not act upon the

prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful

custody." Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-95, 93 S.Ct. 1123,

1129, 35 L.Ed.2d 443 (1973). The BOP's Inmate Locator indicates that Petitioner was released from

---

[3] In support of his claim of irreparable harm, Petitioner states as follows:

In a halfway house he would be able (and required) to work at a regular job during
the day, returning by 6 p.m. for the night. While conditions in a CCC are strict, they
are not nearly as confining as those of the FPC, particularly in terms of the ability to
perform productive work. A longer placement would thus allow him to begin to
satisfy his restitution and to provide financial support to his two children. In addition,
he would have a great opportunity to seek gainful employment. He has no immediate
prospects and thus may well need more than 30-60 days to find work. If petitioner's
transfer to the CCC is delayed, those opportunities and relative deprivation of liberty
can never be restored to him.

(Document No.2, pp. 6-7.)

5

the custody of the BOP on July 29, 2005. Petitioner is currently residing at 455 9th Street, Ashland, Kentucky 41101, which the undersigned understands to be a halfway house. In this case, by virtue of Plaintiff's release, the Respondent can no longer "reconsider Petitioner for more than 30-60 days' placement (up to 180 days) in a Community Corrections Center." Accordingly, Petitioner's claims are rendered moot by virtue of his release from the custody of the BOP and transfer to a CCC, and his § 2241 Application must be dismissed. <u>See e.g.</u>, <u>Kearns v. Turner</u>, 837 F.2d 336, 337 (8th Cir. 1988)(Habeas petitioner's suit to enjoin transfer for sentencing upon charges rendered moot where petitioner had already been transferred and sentenced.). Alternatively, the undersigned recommends below that Petitioner's claims be dismissed on their merits.

## II.     Exhaustion of Administrative Remedies.

Federal prisoners challenging the execution of their sentence must exhaust administrative remedies prior to seeking *habeas* review under 28 U.S.C. § 2241. <u>See</u> <u>Pelissero v. Thompson</u>, 170 F.3d 442, 445 (4th Cir. 1999); <u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994). Unlike the statutory exhaustion requirement applicable to cases filed under the Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a) (1996), and 28 U.S.C. § 2254, the exhaustion prerequisite for filing § 2241 cases is judicially imposed. As such, the exhaustion requirements remain within the Court's discretion and may be waived in certain circumstances. <u>See</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992)(Holding that exhaustion was not required by the PLRA when the prisoner was seeking only monetary damages) *superseded by statute* 42 U.S.C. § 1997e(a)(1996)(Requiring exhaustion of administrative remedies by prisoners even when seeking only monetary damages). The majority of the Circuit Courts of Appeal have held that exhaustion under 28 U.S.C. § 2241 is not required when pursuing administrative remedies would be futile. <u>See</u>

Winck v. England, 327 F.3d 1296, 1304 (11th Cir. 2003)(With respect to military *habeas* petitions, exhaustion is generally not required where "administrative appeal would be futile."); Holman v. Booker, 1998 WL 864018, *3 (10th Cir. Dec. 14, 1998)(The futility exception applies to § 2241 "only where there is a recent, adverse determination disposing of the precise point raised by the petitioner seeking to apply the exhaustion requirement."); Campbell v. Barron, 2004 WL 291180 (6th Cir. Feb. 12, 2004)(Recognizing a futility exception to § 2241 petitions); Fuller v. Rich, 11 F.3d at 62 ("Exceptions to the exhaustion requirement are appropriate where the . . . attempt to exhaust such remedies would itself be a patently futile course of action."); Beharry v. Ashcroft, 329 F.3d 51, 62 (2d Cir. 2003)(Exhaustion not required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.")(internal citations omitted).

Although the Fourth Circuit has not directly considered whether a futility exception applies in § 2241 *habeas* cases, the Court held in Rowe v. Petyon, 383 F.2d 709, 711 (4th Cir. 1967) aff'd, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), that a federal prisoner attacking the constitutionality of a future state sentence was not required to exhaust state remedies where the question to be decided was already presented by another prisoner and rejected upon procedural grounds.[4] The holding in Rowe illustrates the Court's willingness to adopt a futility exception to the general exhaustion requirement. Cf. McClung v. Shearin, 2004 WL 225093 (4th Cir. Feb. 6, 2004)("Failure to exhaust may only be excused upon a showing of cause and prejudice.").

---

[4] The undersigned acknowledges that *Rowe* is a pre-AEDPA case and reiterates that the § 2241 exhaustion requirement is judicially imposed rather than statutorily required.

Under the BOP's Administrative Remedy Program, 28 C.F.R. §§ 542.10-19, a process "through which inmates may seek formal review of an issue which relates to any aspect of their confinement," federal prisoners are required first to attempt to resolve their grievances informally, and if unsuccessful, file appeals to the Warden, then to the Regional Director, and finally, to the Office of General Counsel.[5] 28 C.F.R. § 542.10. Because Petitioner's ultimate appeal is to the Office of General Counsel, the entity that would have enacted, or at least assisted in enacting, 28 C.F.R. § 523.20, the regulation challenged herein, Petitioner's resort to any further administrative remedies

---

[5] The Administrative Remedy Program however, is not all-encompassing. Section 542.12 (b) provides as follows:

> Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation Claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate administrative procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

28 C.F. R. § 542.12(b). Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. *Id.*, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about 120 days to complete.

8

would be futile. See e.g., Colton v. Ashcroft, 299 F.Supp.2d, 681, 690 (E.D. Ky. Jan. 15, 2004)("As there has been a prior indication that the Attorney General's Office has evidenced a strong position on the issue, together with an unwillingness to reconsider, resort to administrative remedies for this plaintiff is futile."); see also, Esposito v. Ashcroft, 2005 WL 119872 (N.D. W.Va. 2005)(Excusing as futile petitioner's failure to exhaust his challenges to the BOP's change in policy)(citing Fagiolo v. Smith, 326 F.Supp.2d 589, 590 (M.D. Pa. 2004); Zucker v. Menifee, 2004 WL 102779 (S.D. N.Y. 2004). Accordingly, the undersigned finds that to the extent Petitioner had not fully exhausted his administrative remedies prior to filing his instant habeas Petition, the requirement should be excused on the ground of futility.

III.     **Community Corrections Centers and the BOP's Change in Policy**

        A.     **Application of the BOP's new policy does not violate the Administrative Procedure Act.**

                1.     **The BOP's change in policy constitutes an interpretation of 18 U.S.C. § 3624(c) and therefore, is exempt from the APA's notice and comment requirements.**

When an agency promulgates substantive rules or regulations, the Administrative Procedure Act [APA], 5 U.S.C. § 553(b)-(d), requires the agency to publish in the Federal Register general notice of the proposed rule or regulation. 5 U.S.C. § 553(b).[6] After notice is published, interested

---

[6] Section 553(b) provides:

(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include - -

(1) a statement of the time, place, and nature of public rule making proceedings;

(2) reference to the legal authority under which the rule is proposed; and

persons must be accorded a period of at least 30 days to comment on the proposed rule or regulation. 5 U.S.C. § 553(c).[7] This notice and comment requirement, however, is inapplicable to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3). Interpretative rules "simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties." Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n, 874 F.2d 205, 207 (4th Cir. 1989). "In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." Id. The OLC memorandum and the BOP's new practice merely interprets the meaning of § 3624(c) to not require prisoners' pre-release to CCCs prior to the lesser of the last ten

---

(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

Except when notice or hearing is required by statute, this subsection does not apply -

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

5 U.S.C. § 553(b).

[7] Section 553(c) provides:

After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose. When rules are required by statute to be made on the record after opportunity for an agency hearing, sections 556 and 557 of this title apply instead of this subsection.

5 U.S.C. § 553(c).

percent of their sentence, or six months. The BOP's new policy, while contrary to its preexisting policy, nevertheless does not impose any new rights or duties or alter the statutory text. Although the new practice reduces the amount of time Petitioner would have spent in a halfway house under the old policy, "an interpretive rule changing an agency's interpretation of a statute is not magically transformed into a legislative rule" because it alters the statute's effect. White v. Shalala, 7 F.3d 296, 304 (2d Cir. 1993). The BOP's new policy is nothing more than an internal agency guideline, which is not subject to the rigors of the APA.[8] See Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995). In Reno v. Koray, the Supreme Court stated that a BOP's Program Statement is an "internal agency guideline . . . akin to an 'interpretative rule' that 'do[es] not require notice and comment.'" Id. (citations omitted). The BOP's new policy simply corrects a prior misinterpretation of § 3624(c), and states what the BOP believes the statute to require; the statute itself has not changed. Accordingly, the undersigned finds that the BOP's new policy constitutes its interpretation of the requirements of § 3624(c) and, therefore, is excluded from the notice and comment provisions of the APA.

> **2.    Judicial review of the BOP's "rulemaking" is not precluded under 18 U.S.C. § 3625.**

Title 18 U.S.C. § 3625 provides:

**Inapplicability of the Administrative Procedure Act**

The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

---

[8] The BOP's practice followed prior to December, 2002, is found in BOP P.S. 7310.04. Although there is no indication that this Program Statement has been amended to reflect the policy change, the new practice nevertheless carries the same weight as a program statement and serves as an internal agency guideline lacking the force of law.

18 U.S.C. § 3625. Section 3625 effectively precludes from judicial review the BOP's adjudicative decisions made pursuant to 5 U.S.C. §§ 554 and 555. Absent from this preclusion, however, is review of the BOP's rulemaking decisions under 5 U.S.C. § 553. See Martin v. Gerlinski, 133 F.3d. 1076, 1079 (8th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627, 630-31 (10th Cir. 1998)("[W]hile § 3625 may preclude us from reviewing the BOP's substantive decision . . . it does not prevent us from interpreting the statute to determine whether the BOP exceeded its statutory authority."); Wiggins v. Wise, 951 F.Supp. 614, 618-19 (S.D. W.Va. 1996)("[T]he court finds that 18 U.S.C. § 3625 does not preclude judicial review of agency rulemaking."). The undersigned finds that absent some constitutional violation, § 3625 effectively precludes judicial review of any BOP decision with respect to pre-release custody under § 3624(c). In the instant action, however, the Court will consider the merits of Petitioner's claims as he is challenging the constitutionality of the BOP's new policy or interpretation of § 3624(c), as opposed to challenging only the BOP's decision not to place him in a CCC.

**B.    The BOP's interpretation of 18 U.S.C. § 3624(c).**

       **1.    The BOP's interpretation of 18 U.S.C. § 3624(c) is a reasonable and permissible construction of the statute.**

Petitioner contends that the BOP's change in policy is contrary to 18 U.S.C. §§ 3624(c) and 3621(b). (Document No. 1, p. 7.) In reviewing an agency's interpretation of a statute, it is well settled that the Court must accord "substantial deference" to the agency's reasonable interpretation of a statute Congress has charged it with administering. See Chevron, U.S.A., Inc.  v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 1781-83, 81 L.Ed.2d 694 (1984). When the agency's regulatory action is not subject to the APA, however, deference due under Chevron is

inapplicable and the agency's interpretation is only "entitled to some deference. . . [so long as] it is a 'permissible construction of the statute.'" See Reno v. Koray, 515 U.S. at 61, 115 S.Ct. at 2027; see also, Fuller v. Moore, 1997 WL 791681 (4th Cir. Dec. 29, 1997)(BOP program statements are not subject to the rigors of the APA and therefore, are only entitled "some deference."). Although the Supreme Court did not explain the difference between "substantial deference" and "some deference," the Eleventh Circuit explained the meaning of "some deference" as follows:

> We do not think it is obvious, however, that "some deference" means there are occasions in which we should uphold the interpretation contained in a BOP program statement, even though it is different from the one we would reach if we were deciding the matter *de novo*. If that were not true, "some deference" would be the same as "no deference," and that would render the Supreme Court's word in Koray meaningless.

Cook v. Wiley, 208 F.3d 1314, 1319-20 (11th Cir. 2000). In Christensen v. Harris County, 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), in declining to defer to an agency's interpretation contained in an opinion letter, the Supreme Court stated:

> Interpretations such as those in opinion letters -- like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law -- do not warrant Chevron-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'

Christensen, 529 U.S. at 587, 120 S.Ct. at 1662 (citations omitted). Having already determined that the BOP's new policy is not subject to the notice and comment provisions of the APA, the undersigned finds that the new policy is entitled only "some deference" or "respect proportional to 'its power to persuade.'" See United States v. Mead Corp., 533 U.S. 218, 235, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)(citations omitted). Under this framework, the undersigned finds that the BOP's interpretation of § 3624(c) is a "permissible construction of the statute" and is in accord with its

plain meaning and legislative intent.

The plain language of § 3624(c) expressly limits the BOP's placement of prisoners under pre-release conditions to "a reasonable part, not to exceed six months, of the last 10 percentum of the term to be served. . . " 18 U.S.C. § 3624(c). Section 3624(c) does not mandate the method of achieving these pre-release conditions. Rather their execution, to the extent that such conditions are practicable, is left to the BOP's discretion. Id. The most common manner in which the BOP achieves these pre-release conditions is to place prisoners in community confinement, such as halfway houses or CCCs, prior to the end of their sentence. See BOP P.S. 7310.04 ("CCCs provide an excellent transitional environment for inmates nearing the end of their sentences."); see also, United States v. Restrepo, 999 F.2d 640, 645 (2d Cir.) cert. denied, 510 U.S. 954, 114 S.Ct. 405, 126 L.Ed.2d 352 (1993)("Typically such preparatory reentry confinement involves reassignment to a minimum security facility such as a halfway house."). A fortiori, § 3624(c) expressly limits the "back end" placement of federal prisoners in community confinement prior to the end of the prisoner's sentence to the lesser of 10 percent of their sentence, or six months. 18 U.S.C. § 3624(c).  See Adler v. Menifee, 293 F.Supp.2d 363, 367 (S.D. N.Y. 2003)("[T]he plain meaning of the statute and the overwhelming majority of the decided cases prevent this Court from granting the relief requested. Back end entry is clearly controlled by 18 U.S.C. § 3624(c) previously quoted and the plain meaning of that statute is obvious.").

Section 3621(b), on the other hand, vests the BOP with the discretionary authority to designate the place in which a federal prisoner shall serve his term of imprisonment. This section provides:

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The

> Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, . . . . The Bureau may at any time . . . direct the transfer of a prisoner from one penal or correctional facility to another. . . .

18 U.S.C. § 3621(b). A vast number of the federal courts have rationalized that under § 3621(b), the BOP may transfer a federal prisoner to community confinement at any time during his sentence, regardless of the express limitation found in § 3624(c). These courts have concluded that under the canons of statutory construction, § 3624(c) cannot be read in isolation. See e.g., Grimaldi v. Menifee, 2004 WL 912099, * 3-7 (S.D. N.Y. Apr. 29, 2004)("[T]he Court is cognizant of another equally important tenet of statutory construction, namely that statutes should not be read in isolation, and thus must construe § 3624(c) together with § 3621(b)."). Rather, § 3624(c) must be read together with § 3621(b) to determine the BOP's full authority through the legislative mandate. In construing these sections together, these courts have concluded that the BOP's new interpretation is erroneous. See e.g., Id.; Elwood v. Jeter, 386 F.3d 842, 847 (8th Cir. 2004)(Section "3624(c) does not require placement in a CCC. It only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more."); Goldings v. Winn, 383 F.3d 17 (1st Cir. 2004)("The BOP's discretionary authority under § 3621(b) is not subject to the temporal limitations of 18 U.S.C. § 3624(c)."); Crowley v. Federal Bureau of Prisons, 312 F.Supp.2d 453, 462 (S.D.N.Y. 2004)(District Judge Hellerstein)("[T]he grant of authority to the BOP in 18 U.S.C. § 3621(b) is broad enough to encompass the power to designate or transfer inmates to CCCs prior to the final ten percent of their terms, and the OLC Memorandum and the subsequent change in BOP policy are invalid, as they are based on incorrect readings of 18

U.S.C. § 3621(b)."); <u>DiStefano v. Federal Bureau of Prisons</u>, 2004 WL 396999, * 4-6 (S.D.N.Y. March 4, 2004)(Section 3624(c) "does not limit BOP's authority to place a prisoner in a CCC; instead it mandates that each prisoner should have the opportunity to be placed in conditions which will help ease the petitioner's transition out of prison."); <u>Zucker v. Menifee</u>, 2004 WL 102779, * 10 (S.D.N.Y. Jan. 21, 2004)(Concluding that "§ 3621(b), read in conjunction with § 3624(c), allows the BOP to consider prisoners for CCC placement prior to their six-month/10% date."); <u>Cato v. Menifee</u>, 2003 WL 22725524, *4-6 (S.D.N.Y. Nov. 20, 2003); <u>Monahan v. Winn</u>, 276 F.Supp.2d at 205-212 (Section 3624 "does not and never did mandate pre-release into community or home confinement . . . Section 3621 places federal inmates firmly within the custody of the Bureau of Prisons for their terms of imprisonment and affords the BOP ample discretion to determine the appropriate location to exercise that custody."); <u>Howard v. Ashcroft</u>, 248 F.Supp.2d 518, 537-46 (M.D.La. 2003).

These Courts have held that the BOP's policy is erroneous for the following reasons. First, the plain language of § 3621(b) clearly demonstrates that the BOP's broad discretionary authority to "designate the place of prisoners' imprisonment" encompasses community confinement facilities, as well as traditional BOP "prison" facilities. <u>See</u> <u>Grimaldi v. Menifee</u>, 2004 WL 912099 at *4. Because past practice and prior policies are in conflict with the BOP's new interpretation, the prior practices and policies tend to undermine the persuasiveness of the new interpretation. Second, the legislative history of § 3621(b) supports the BOP's prior policy. <u>Id</u>. at *5. Although § 3621(b) does not include its predecessor's (18 U.S.C. § 4082) specific language concerning CCCs, the 1965 amendment to include "or facility" as any available, suitable and appropriate institution encompassed CCCs. <u>Id</u>.  Third, neither the statutory text nor legislative history of § 3621(b) supports

a finding that the BOP may not designate an inmate to a CCC under § 3621(b) in excess of the last

ten percent of the term of imprisonment. Id. Finally, CCCs constitute imprisonment for purposes of

§ 3621(b). Id. at *5-6.

  In Goldings v. Winn, the First Circuit determined that § 3621(b) was unambiguous and that

the plain language of the statute gave the BOP the

> discretionary authority to designate any available penal or correctional facility that
> meets minimum standards of health and habitability, as the place of a prisoner's
> imprisonment, and to transfer a prisoner at any time to such a facility. A community
> correction center is a correctional facility and therefore may serve as a prisoner's
> place of imprisonment. . . . Because the intent of Congress is clear in its grant of
> discretionary authority to the BOP to transfer a prisoner to any available penal or
> correctional facility, we must give effect to that intent.

Goldings v. Winn, 383 F.3d at 28. The First Circuit further determined that the BOP was not limited

by § 3624(c) and therefore, could transfer a prisoner to a CCC prior to the last ten percent or six

months of his term of imprisonment. Id.

  Similarly, in Elwood v. Jeter, the Eighth Circuit determined that "3621(b) gives the BOP the

discretion to transfer prisoners to CCCs at any time during their incarceration." Elwood v. Jeter, 386

F.3d at 847.

> 18 U.S.C. § 3624(c) does not require placement in a CCC. It only obligates
> the BOP to facilitate the prisoner's transition from the prison system. Under §
> 3621(b), the BOP may place a prisoner in a CCC for six months, or more. Under §
> 3624(c) the BOP must formulate a plan of pre-release conditions. This plan may
> include CCC placement, home confinement, drug or alcohol treatment, or any other
> plan that meets the obligation of a plan that addresses the prisoner's re-entry into the
> community. Likewise, the obligation is qualified by the phrase "to the extent
> practicable." Security concerns or space limitations in a CCC near the prisoner's
> home are among the factors that may make it impractical to transfer a prisoner to a
> CCC for all or even part of the transition period.

Id.

  When a statute is unambiguous, the Court must apply it as written and not resort to rules of

17

statutory construction. <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340 - 41, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). When a statute is ambiguous, it may be read, construed and applied *in pari materia* with other statutes which relate to the same subject matter so that the legislature's intention as gathered from all of the enactments can be effectuated. <u>Erlenbaugh v. United States</u>, 409 U.S. 239, 243 - 44, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972). The undersigned finds that § 3624(c) is plain and unambiguous, and finds therefore that resort to § 3621(b) is unnecessary. <u>See</u> <u>Cohn v. Federal Bureau of Prisons</u>, 302 F.Supp.2d 267, 273-74 (S.D.N.Y. 2004 )(District Judge Pauley)(The plain language of § 3624(c) limits back end placement in community confinement to the last 10 percent of the prisoner's sentence; "the BOP's current interpretation of § 3624(c), and its interrelationship with § 3621(b), are reasonable and permissible constructions of those statutes.")[9]; <u>Adler v. Menifee</u>, 293 F.Supp.2d at 368 (finding that the petitioner was "not entitled to the relief sought, in light of the plain meaning of Section 3624(c)."); <u>Benton v. Ashcroft</u>, 273 F.Supp.2d 1139, 1143-46 (S.D. Cal. 2003); <u>Kennedy v. Winn</u>, 2003 WL 23150108, *2 (D. Mass. July 9, 2003). In <u>Cohn v. Federal Bureau of Prisons</u>, Judge Pauley determined that even if a CCC constitutes the place of a prisoner's imprisonment within the meaning of § 3621(b), the specific language of § 3624(c) "operates as an express limitation on § 3621(b)'s broad grant of general authority." <u>Id.</u>, 302 F.Supp.2d at 273. To not construe § 3624(c) as a limitation on the BOP's § 3621(b) discretionary authority "would vitiate § 3624(c)'s 10% restriction, therefore violating the fundamental principle

---

[9] In his decision in *Crowley*, District Judge Hellerstein distinguished District Judge Pauley's decision in *Cohn* factually. *Crowley*, 312 F.Supp.2d at 463. Noting that "the debate has raged in judicial fora throughout the country, with district courts reaching opposing conclusions", Judge Hellerstein stated that "there is no indication that the sentencing judge[] in *Cohn* . . . relied upon BOP procedure. By contrast, I did rely on the prior BOP regime in fashioning my sentence. The weight of the precedent, in cases similar to Mr. Crowley's, supports my conclusion." *Id.*, citations omitted.

18

of statutory construction that courts 'must be reluctan[t] to treat statutory terms as surplusage' in any setting." Id. (citations omitted). Similarly, in Panchernikov v. Federal Bureau of Prisons, 2004 WL 875633, *2 (S.D.N.Y. Apr. 23, 2004), although ultimately concluding that the new policy violates the *ex post facto* clause, the Court concluded that "the language of § 3624(c) limits the broad grant of authority in § 3621(b) and that the BOP's interpretation of the statutory language is correct." See also, Crapanzano v. Menifee, 2004 WL 736860, *2, n. 5 (S.D.N.Y. Apr. 5, 2004)("[T]he more specific § 3624(c) operates as an express limitation on § 3621(b)'s broad grant of general authority."); cf. Loeffler v. Menifee, 2004 WL 1252925, *5-6 (S.D.N.Y. June 7, 2004)(Finding that the BOP does not have discretion under § 3621(b) to transfer prisoners to CCCs and thus, § 3624(c) appropriately conditions release to CCCs upon time limitations).

Without determining whether placement in a CCC or halfway house constitutes "place of imprisonment" within the meaning of § 3621(b), the undersigned finds that the general grant of authority found in § 3621(b), is limited by the specific language of § 3624(c). To find otherwise would vitiate the express limitation of § 3624(c). See Esposito v. Ashcroft, 2005 WL 119872 at * 11 ("The language of § 3624(c) is very specific regarding the amount of time that the BOP can place a prisoner in a CCC and such language overrides the general discretionary authority provided in § 3621(b)."). In Elwood v. Jeter, the dissenting opinion reconciled the two statutes as follows:

> Under § 3621(b), therefore, the BOP generally may place an inmate in any penal or correctional facility at any time, subject, however, to the specific time limitations set forth in section § 3624(c). Without rendering meaningless any terms in either statute, this interpretation utilizes the language contained in both statutes, and specifically gives life to section § 3624(c)'s limitations on placements in transitional facilities at the end of an inmate's term. Such an interpretation further complies with the canon, "the specific governs the general."

Elwood v. Jeter, 386 F.3d at 847; see also, Lagunas v. Adams, Civil Action No. 1:04-0325 (S.D.

19

W.Va. Mar. 28, 2005)(Chief Judge Faber). Based on the foregoing, the undersigned finds that the

BOP's new interpretation of § 3624(c) is a reasonable and permissible construction of the statute

and is not inconsistent with the plain language of either § 3624(c) or § 3621(b).

> **2.**     **The legislative history of 18 U.S.C. § 3624(c) supports the BOP's new interpretation.**

Looking behind the unambiguous nature of § 3624(c), the legislative history of the statute

provides further support for the finding that the BOP's new interpretation is reasonable. Section

3624, enacted in 1984, Pub.L. 98-473, Title II, § 212(a)(2), Oct. 12, 1984, 98 Stat. 2008, has been

amended a number of times. Specifically, in 1990, while considering certain amendments that would

have eliminated the pre-release limitation periods in § 3624(c) and permitted the BOP to place

prisoners in community confinement for longer periods of time, the House Judiciary Committee

interpreted the proposed amendments as follows:

> Sections 1403 and 1404 address the Federal Bureau of Prisons' authority to place
> inmates in community corrections programs and home confinement. Currently, the
> Bureau of Prisons can only place an inmate in a Community Correction Center for
> up to six months or for the last 10 percent of his or her sentence, whichever is
> shorter. Section 1403 would authorize the Bureau of [P]risons to place certain non-
> violent offenders in community facilities for longer time periods at the end of their
> sentences so that they can better readjust to society. Section 1404 restores the Bureau
> of Prisons' previously existing authority to designate an appropriate place for
> offenders to serve their sentences, including Community Correction Centers or home
> confinement.

H.R. Rep. No. 101-681(I) at 140, *reprinted in* 1990 U.S.C.C.A.N. at 6546. Avid dissenters, however,

rejected the elimination of § 3624(c)'s time limits but endorsed the possibility of home confinement

during the period of pre-release conditions. The dissenters were concerned in part, that under the

amendment, convicted felons would not be serving time in jail. Rather, they would be in "therapy

programs or home detention." Id. at 338. Thus, the amendment passed and added only the sentence:

"The authority provided by this subsection may be used to place a prisoner in home confinement."
136 Cong. Rec. 36,930 (1990)(House); 136 Cong. Rec. 36, 318 (Senate); Pub.L. No. 101-647, Title
XXIX, §§ 2902(a), 2904, Nov. 29, 1990.

In <u>Monahan v. Winn</u>, the District Court concluded that reliance on the reports surrounding
the 1990 amendments constitutes nothing more than "a *post hoc* blip from § 3624(c)'s legislative
history that allegedly turns all of the preceding law and logic on its head." <u>Id</u>., 276 F.Supp.2d at 209-
10. Because the Court found the meaning of § 3621(b) clear on its face, it refused to consider the
legislative history of § 3624(c). <u>Id</u>. The undersigned has already determined that the plain language
of § 3624(c), reflecting an unwillingness to eliminate § 3624(c)'s time limits, indicates that the
BOP's interpretation is correct. The legislative intent of § 3624(c) serves only as further support for
the BOP's position.

> **3.    In view of the substantial basis in law and legislative history of
> the BOP's interpretation of § 3624(c), the BOP's interpretation
> is not arbitrary and capricious.**

To establish that the BOP's interpretation of § 3624(c) is arbitrary and capricious, the
Petitioner must demonstrate that the interpretation has "no rational basis or that it involved a clear
and prejudicial violation of applicable statutes or regulations." <u>Kroger Co. v. Regional Airport Auth.</u>
<u>Of Louisville and Jefferson County</u>, 286 F.3d 382, 389 (6th Cir. 2002); <u>see also</u> <u>National Motor</u>
<u>Freight Traffic Ass'n, Inc. v. Interstate Commerce Comm'n</u>, 590 F.2d 1180, 1184 (D.C. Cir. 1978)
*cert. denied*, 442 U.S. 909, 99 S.Ct. 2822, 61 L.Ed.2d 275 (1979)(arbitrary and capricious standard
requires the court to defer to the agency's interpretation so long as it contains a rational basis.).
Review under this standard "is the least demanding review of an administrative action", <u>Kroger Co.</u>,
286 F.3d at 389, and the Court must not "substitute its judgment for that of the agency" unless the

agency exhibited a "clear error of judgment." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm</u> <u>Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866-67, 77 L.Ed.2d 443 (1983). The undersigned has already determined that the BOP's interpretation is a reasonable and permissible construction of § 3624(c) and is supported by legislative history. Consequently, the BOP's interpretation is not arbitrary and capricious. The undersigned finds that it is unreasonable to interpret § 3621(b) as conferring unfettered discretion to the BOP to place federal prisoners in CCCs at any time during their incarceration. Such unbridled discretion would thwart the intent of both the sentencing Courts and the United States Sentencing Guidelines, that defendants in similar circumstances receive similar sentences. This uniformity of sentencing for like offenses, relevant conduct, and criminal history, could not be achieved if the BOP possessed the authority to transfer prisoners to community confinement at any time and for any reason. Section 3624(c) was enacted to restrain the BOP's discretion and the BOP's interpretation as such is certainly not contrary to law. Accordingly, the BOP's interpretation is based in law and legislative intent and is not arbitrary and capricious.

> **4.    Because the language of § 3624(c) is unambiguous, the rule of lenity is inapplicable to Petitioner's case.**

The rule of lenity is a rule of statutory construction which requires that ambiguities in criminal or punitive statutes must be resolved in favor of the Petitioner. <u>See e.g.</u>, <u>United States v.</u> <u>One 1973 Rolls Royce</u>, 43 F.3d 794, 819 (3d Cir. 1994). The rule applies only if ambiguity remains after the Court has applied all established principles of statutory construction. <u>United States v.</u> <u>R.L.C.</u>, 503 U.S. 291, 293, 112 S.Ct. 1329, 1332, 117 L.Ed.2d 559 (1992)("No ambiguity about the statute's intended scope survives the foregoing analysis, but if any did, the construction yielding the

shorter sentence would be chosen under the rule of lenity."); Chapman v. United States, 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524 (1991)(Statute must be ambiguous for rule of lenity to apply.). In Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980), the Supreme Court defined the policy of lenity to mean "that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." In the absence of a statutory ambiguity, "a court may not manufacture an ambiguity in order to defeat Congress' intent." United States v. Blannon, 836 F.2d 843, 845 (4th Cir.) *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). Having determined that the plain language of § 3624(c) supports the BOP's interpretation and that the interpretation is a reasonable and permissible construction of the law in accord with the legislative intent, the undersigned concludes that the rule of lenity has no application to the analysis of the propriety of the BOP's interpretation.

**C.     The BOP's change in policy does not violate Petitioner's due process rights.**

Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law", the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added). To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine

23

whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectible right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, for Petitioner to establish a deprivation of a liberty interest with respect to the application of the new BOP policy to him, he must show either (1) that he has a legitimate entitlement to early release to a halfway house or (2) that the BOP's new policy creates an atypical and significant hardship on him in relation to the ordinary incidents of prison life. See Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2299-2300.[10]

Petitioner does not possess a liberty interest in serving his term of imprisonment in community confinement or in any other particular facility or program. See Olim v. Wakinekona, 461

---

[10] Chief Judge Faber held in *Webster v. Adams*, Civil Action No. 1:03-0690 (May 13, 2004) that an inmate's due process rights were not violated when the BOP did not find her entitled to participate in an educational release program. Judge Faber's ruling was affirmed by the unpublished opinion of the Fourth Circuit Court of Appeals. *Webster v. Adams*, Case No. 04-6911 (4th Cir. Aug. 20, 2004).

U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983)("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a state."); Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); Prows v. Federal Bureau of Prisons, 981 F.2d 466, 469 n. 3 (10th Cir. 1992), *cert. denied*, 510 U.S. 830, 114 S.Ct. 98, 126 L.Ed.2d 65 (1993)("[F]ederal prisoners generally enjoy no constitutional right to placement in any particular penal institution."); Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983); Moore v. United States Attorney Gen., 473 F.2d 1375, 1376 (5th Cir. 1973). As Petitioner states, it is well established that under § 3621(b), the BOP possesses discretionary authority to designate the place of prisoners' confinement and direct their transfer to a different facility. 18 U.S.C. § 3621(b). This discretionary authority is curtailed to some extent by § 3624(c), which requires the BOP to place prisoners under pre-release conditions which will prepare them for re-entry into the community. 18 U.S.C. § 3624(c). Nevertheless, § 3624(c) does not direct that the BOP must place prisoners in a particular facility, such as a halfway house, to achieve these "pre-release conditions." Rather, pursuant to § 3621(b), and subject to the § 3624(c) limitation periods, the BOP retains discretion to determine whether the pre-release conditions or programs will be provided within a BOP facility or within a community confinement setting. Accordingly, Petitioner does not possess a statutorily created liberty interest in release to community confinement. See Hager v. United States Attorney Gen., 2004 WL 691578, *2 (N.D. Tex. Mar. 26, 2004)("While the statute does use mandatory language, it relates only to a general guideline to facilitate the prisoner's post-release adjustment through the establishment of some unspecified pre-release conditions. Thus, § 3624(c) does not create a constitutionally protected liberty interest.")(citations omitted); Lyle v. Sivley, 805 F.Supp. 755, 760-61 (D. Ariz. 1992)(Section 3624(c) does not create a protected liberty interest).

Petitioner further does not possess a protected expectation interest in release to a halfway house for approximately the last six months of his term of imprisonment. Such a subjective expectation does not rise to the level of a constitutional claim. "[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice -- is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit before procedural due process rights are triggered." Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996). Neither the BOP's prior interpretation nor the BOP's Program Statements contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to a protected liberty interest in community confinement. See Kentucky Dept. of Corr. v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Petitioner does not possess a constitutionally protected expectation interest in pre-release custody in community confinement settings.

Furthermore, the BOP's change in policy does not constitute an "atypical and significant hardship" on Petitioner in relation to the ordinary incidents of prison life. Issues of housing and transfers are issues which occur within the "day-to-day management of prisons." See Sandin v. Conner, 515 U.S. at 482, 115 S.Ct. at 2299; Franklin v. District of Columbia, 163 F.3d 625, 634-35 (D.C. Cir. 1998). Because nothing in the record indicates that Petitioner's conditions of confinement at FPC Alderson, as opposed to community confinement, were atypical or resulted in a significant hardship, the undersigned finds that Petitioner has failed to demonstrate a due process violation. Accordingly, his claim on this ground must be dismissed.

     **D.**     **The BOP's application of its new policy does not violate the *Ex Post Facto***

Clause.

The *ex post facto* clause, Article 1, Section 9, Clause 3 of the United States Constitution, prohibits the enactment of any law that is retrospective in nature and disadvantages the offender affected by it.[11] See Lynce v. Mathis, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 F.2d 63 (1997); Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). Concerning the first element, a law is retrospective if it "changes the legal consequences of acts completed before its effective date." Weaver, 450 U.S. at 31, 101 S.Ct. at 965. Regarding the second element of an *ex post facto* claim, an offender is disadvantaged by "any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver, 450 U.S. at 28, 101 S.Ct. at 964 (citations omitted). Thus, even if a law is retrospective, the law does not violate the *ex post facto* clause unless it adds to the quantum of punishment. See Weaver, 450 U.S. at 30-31, 101 S.Ct. at 965. The BOP's new policy neither made behavior punishable that was not punishable at the time it was committed, nor has it increased the punishment of a crime beyond the level imposed. Rather, the new policy only corrects the BOP's prior interpretation of a pre-existing statute, 18 U.S.C. § 3624(c). An agency's correction of a misinterpretation of a pre-existing statute does not give rise to an *ex post facto* violation. See Warren v. Baskerville, 233 F.3d 204, 208 (4th Cir. 2000) *cert. denied*, 534 U.S. 831, 122 S.Ct. 76, 151 L.Ed.2d 41 (2001); Crowley v. Landon, 780 F.2d 440, 444 (4th Cir. 1985)(No *ex post facto* violation in correcting prior misinterpretation of law where no law is being applied retroactively.); Metheney

_____

[11]Article 1, Section 9, Clause 3 of the United States Constitution states: "No Bill of Attainder or ex post facto Law shall be passed." Likewise, Article 1, Section 10, Clause 1 of the United States Constitution states: "No state shall . . . pass any Bill of Attainder, ex post facto Law. ..."

v. Hammonds, 216 F.3d 1307, 1310-11 (11th Cir. 2000) *cert. denied*, 531 U.S. 1196, 121 S.Ct. 1200, 149 L.Ed.2d 14 (2001)("A new regulation which just corrects an erroneous interpretation (even if the error was a reasonable one) by an agency of a clear pre-existing statute does not violate the Ex Post Facto Clause."); Cortinas v. United States Parole Comm'n, 938 F.2d 43, 45-46 (5th Cir. 1991)(Change in regulations to correct agency's interpretation of statute pertaining to mandatory forfeiture of street time following revocation of special parole does not violate the *ex post facto* clause.); Caballery v. United States Parole Comm'n, 673 F.2d 43, 47 (2d Cir.) *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Furthermore, when the corrected interpretation was foreseeable, the agency's correction does not violate the *ex post facto* clause even though the current interpretation disadvantages those who relied on its continued misapplication. See Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir.) *cert. denied*, 513 U.S. 1002, 115 S.Ct. 516, 130 L.Ed.2d 422 (1994).

The facts of Stephens v. Thomas are similar to the facts at hand. Mr. Stephens was convicted in the State of New Mexico and sentenced to life imprisonment. Four days prior to his conditional parole release date, *via* good conduct time credit, the Parole Board rescinded his parole pursuant to notification from the Attorney General that the ten year minimums could not be reduced for life imprisonment. This new practice was applicable only to those inmates who had not yet been released on parole and did not revoke the parole of those already released. The Court found that the plain language of the state statute foreseeably established a ten year minimum prior to parole eligibility and that the legislative history did not indicate otherwise. Thus, the Court concluded that there was no *ex post facto* violation. Here, as in Thomas, the plain language of § 3624(c) provides that pre-release conditions, including confinement in a halfway house, is expressly limited to the lesser of

28

the last ten percent of a prisoner's sentence, or six months. Give this plain language, the BOP's new interpretation was foreseeable.

Similarly, in <u>Caballery</u>, the prisoner, charged with absconding from parole, contended that when he was sentenced, the United States Parole Commission's [USPC] practice was not to toll a youth offender's sentence for the time during which he failed to report to his parole supervisor. <u>Caballery</u>, 673 F.2d at 45. He argued that the USPC's application of a new regulation to him, resulting in the tolling of his sentence under the Youth Corrections Act [YCA] for the time during which he absconded from parole, and ultimately a sentence in excess of what it would have been under the prior policy, violated the *ex post facto* clause. <u>Id</u>. Finding that the rehabilitative purposes of the YCA could only be achieved if the defendant underwent "the treatment and supervision contemplated by the Act.", the Second Circuit concluded that the USPC's prior interpretation was erroneous and that such misinterpretation could not support an *ex post facto* claim. <u>Id</u>. The Court further found that tolling the defendant's sentence neither extended nor increased his original sentence, rather it incorporated "the common law rule that lapse in time does not constitute service of sentence." <u>Id</u>. at 46.

In the present action, as in <u>Caballery</u>, the BOP's new interpretation merely corrected its prior misinterpretation of § 3624(c). The BOP's new interpretation of § 3624(c) neither changes the law nor increases or extends Petitioner's sentence. Rather, the policy only alters the place where Petitioner will serve his sentence, which does not support an *ex post facto* violation. Accordingly, Petitioner has failed to establish that the BOP's new policy added to the quantum of his sentence as required under the second prong of the *ex post facto* analysis. Because the two part analysis of an *ex post facto* claim is conjunctive, the undersigned does not consider the retrospective application

29

of the BOP's new policy to Petitioner and finds that the BOP's policy does not violate the *ex post facto* clause.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Petitioner's "Motion for a Temporary Restraining Order and/or Preliminary Injunction" (Document No. 2.), **DISMISS** Petitioner's § 2241 Application (Document No. 1.) with prejudice and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge

Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Petitioner, *pro se*.

ENTER: August 16, 2005.

R. Clarke VanDervort
United States Magistrate Judge